DECISION AND JOURNAL ENTRY
{¶ 1} Defendant-Appellant, Joshua Lortz, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I {¶ 2} During his adolescence, Lortz lived with his mother and half-sister, Toni M., at their mother's residence. As accusations that Lortz sexually abused Toni M. surfaced, however, Lortz moved out of the family home and stayed away for a number of years. While Lortz was away, Toni M. had two children: H.M., born June 6, 2002; and K.M., born April 28, 2004. Toni M. and her children lived on Crosby Street in Akron, Ohio, several doors down from Connie and Carl D. Connie and Carl D. had three daughters: CD., born July 27, 1987; M.D., born February 25, 1990; and R.D., born October 10, 1991.
 {¶ 3} In 2005, Lortz returned to the Akron area and moved into Toni M.'s Crosby Street residence. He quickly befriended Carl D. with whom he claimed to share an interest in *Page 2 
mechanics. As Lortz' friendship with Carl and Connie D. strengthened, he began to visit their home almost every day and spent a lot of time around their three children. Connie D. testified that all three of her girls attended special education classes and had developmental problems.
 {¶ 4} In May 2005, R.D. reported to her schoolteacher that Lortz had touched and fondled her. The school contacted the police, and Detective Robert Bennett notified R.D.'s parents about the possible abuse. R.D.'s parents disbelieved R.D.'s accusation, however, and refused to pursue charges against Lortz. R.D.'s mother, Connie D., described Lortz as her husband's "best friend" during that time and stated that neither she, nor her husband, could fathom that Lortz ever would have harmed their daughters. Instead, she and her husband punished R.D. for creating false stories.
 {¶ 5} In March 2006, Toni M.'s daughter, H.M., told her mother that Lortz "had touched her lola in the dark." Toni M. testified that H.M. used the term "lola" to refer to her vagina. As a result of H.M.'s statement, Toni M. immediately took both H.M. and K.M. to the children's hospital. H.M. was interviewed by a social worker and also examined. K.M. was examined, but not interviewed because she was under the age of three and still struggled with speech. Toni M. testified that K.M. was "slow." Yet, H.M.'s accusation prompted the police to begin investigating Lortz again. Connie and Carl D. also reconsidered R.D.'s previous accusation that Lortz had sexually abused her. Their other child, M.D., also came forward with accusations against Lortz.
 {¶ 6} Detective Bennett and Detective Michael Joyner interviewed Lortz at his mother's house after Toni M. forced him to leave her residence. Detective Bennett testified that Lortz had talked about all five girls (both Toni M.'s and Carl and Connie D.'s) during the interview and admitted sexually molesting all of them to some degree. He told the detectives that H.M. must *Page 3 
have injured her "lola" by climbing on him while he slept and falling on his knee. Lortz agreed to meet the detectives at the police station for a follow-up interview. At the March 22, 2006 interview, Lortz confessed to specific sexual assaults in the form of a written apology letter. Detectives videotaped Lortz while he wrote the letter.
 {¶ 7} In Lortz' letter, Lortz wrote the following: (1) that he felt "excited inside" when H.M.'s "private parts" had touched him; (2) that he "moved his knee side to side" when H.M. fell onto it; and (3) that he experienced sexual desire to touch K.M. when he saw her with her diaper off in her room and "walked into [her] room and took [his] finger and rub[bed] it between [her] private area[.]" In his letter, Lortz also apologized to Toni M. for what he had done to her in the past and wrote that he "need[ed] and want[ed] help." Finally, Lortz wrote that he drafted his letter voluntarily "to write the truth" because he "want[ed] the truth known."
 {¶ 8} On April 4, 2006, the grand jury indicted Lortz on eleven separate counts. The prosecutor dismissed four of the counts, and Lortz proceeded to a bench trial on the following counts: (1) rape as to K.M. in violation of R.C. 2907.02(A)(1)(b); (2) gross sexual imposition as to K.M. in violation of R.C. 2907.05(A)(4); (3) gross sexual imposition as to H.M. in violation of R.C. 2907.05(A)(4); (4) rape as to M.D. in violation of R.C. 2907.02(A)(1)(b); (5) gross sexual imposition as to M.D. in violation of R.C. 2907.05(A)(4); (6) rape as to R.D. in violation of R.C. 2907.02(A)(1)(b); and (7) gross sexual imposition as to R.D. in violation of R.C. 2907.05(A)(4). The trial court found Lortz guilty on all counts, sentenced him to life imprisonment with the possibility of parole in ten years, and found him to be a sexual predator.
 {¶ 9} On June 6, 2007, Lortz filed his notice of appeal. This Court dismissed Lortz' appeal for lack of a final, appealable order because the trial court's judgment entry failed to include Lortz' plea and because Lortz failed to pay his deposit on appeal or timely seek a waiver *Page 4 
of that deposit. Subsequently, Lortz obtained a corrected journal entry from the trial court and filed another notice of appeal. Lortz' appeal is now properly before this Court, raising eight assignments of error for our review.
 II Assignment of Error Number One "THE TRIAL COURT VIOLATED JOSHUA LORTZ'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN CONVICTING HIM OF THE RAPE AND GROSS SEXUAL IMPOSITION OF ALLEGED VICTIM KM. IN VIOLATION OF THE DOCTRINE OF CORPUS DELECTI (sic)."
 {¶ 10} In his first assignment of error, Lortz argues that his convictions for rape and gross sexual imposition as to KM. were imposed in violation of the corpus delicti doctrine. We disagree.
 {¶ 11} The phrase "corpus delicti" refers to the body of a crime, comprised of the act itself and the criminal agency of that act.State v. Smith, 9th Dist. No. 02CA0045, 2003-Ohio-2850, at ¶ 13, quotingState v. Maranda (1916), 94 Ohio St. 364, paragraph one of the syllabus. The Ohio Supreme Court has set forth the corpus delicti doctrine as follows:
 "It has long been established as a general rule in Ohio that there must be some evidence outside of a confession, tending to establish the corpus delicti, before such confession is admissible. The quantum or weight of such outside or extraneous evidence is not of itself to be equal to proof beyond a reasonable doubt, nor even enough to make it a prima facie case." Maranda, 94 Ohio St. at paragraph two of the syllabus. See, also, State v. Edwards (1976), 49 Ohio St.2d 31, paragraph one of the syllabus, vacated on other grounds, Edwards v. Ohio (1978), 438 U.S. 911.
Thus, the corpus delicti doctrine only involves the admissibility of a confession. See Smith at ¶ 14. See, also, State v. Sibley, 9th Dist. No. 23439, 2007-Ohio-7054, at ¶ 15-16. This Court reviews a trial court's ruling on the admissibility of evidence for an abuse of discretion.State v. Roberts, 9th Dist. No. 21532, 2004-Ohio-962, at ¶ 14. An abuse of discretion is more than an *Page 5 
error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
 {¶ 12} Lortz argues that his rape and gross sexual imposition convictions as to K.M. should be reversed because there is no independent evidence of his committing the crime outside of his "purported confession." He claims that he preserved this issue for appeal by objecting during Detective Bennett's testimony. Lortz objected in the following manner:
 "[PROSECUTOR]: And then you and Detective Joyner then interviewed Mr. Lortz?
 "[BENNETT]: That's correct.
 "[PROSECUTOR]: * * * [W]hat was basically said by Mr. Lortz in that interview?
 "[DEFENSE]: Judge, I would object. You can't get a statement in without first showing corpus delicti of the crime[.]"
The record reflects that Lortz' confession was not limited to his oral statements to the detectives. Lortz also gave detectives a written letter of apology in which he admitted to sexually abusing K.M. Lortz never objected to the admission of the letter of apology. He limited his objection to the introduction of the "statement" that he made to the detectives during the interview.
 {¶ 13} A party must contemporaneously object to any possible error at trial in order to preserve that error for appeal. See Ponder v.Kamienski, 9th Dist. No. 23270, 2007-Ohio-5035, at ¶ 12-13. If a party fails to timely assert his rights through a contemporaneous objection, he forfeits the issue for appeal and confines a reviewing court's analysis to any assertion of plain error. State v. Payne,114 Ohio St.3d 502, 2007-Ohio-4642, at ¶ 23; Crim. R. 52(B). Yet, it is the party's obligation to assert that plain error exists. See State v.Hairston, 9th Dist. No. 05CA008768, 2006-Ohio-4925, at ¶ 11. This Court will not independently undertake a plain error analysis when an appellant fails to argue that argument in his brief. Id. *Page 6 
 {¶ 14} The record reflects that Lortz failed to contemporaneously object to the admission of his written letter of apology, which mirrored the statements that he made to Detective Bennett. Furthermore, Lortz has not argued plain error on appeal. Because Lortz failed to preserve this issue for review, we decline to address it. See id. Lortz' first assignment of error lacks merit.
 Assignment of Error Number Two "THE TRIAL COURT CONVICTED JOSHUA LORTZ BASED UPON INCOMPETENT VICTIM TESTIMONY, IN VIOLATION OF HIS STATUTORY AND DUE PROCESS RIGHTS."
 {¶ 15} In his second assignment of error, Lortz argues that the trial court erred in convicting him of rape and gross sexual imposition as to both M.D. and R.D. because the State never requested an Evid. R. 807 competency hearing to determine whether M.D. and R.D. were competent to testify. We disagree.
 {¶ 16} "[A] finding of competency is required under the terms of Evid. R. 807[,]" which governs the admission of child statements in abuse cases. State v. Redfearn, 9th Dist. No. 06CA009040, 2007-Ohio-4108, at ¶ 21, citing State v. Said (1994), 71 Ohio St.3d 473, 477. For Evid. R. 807 to apply, however, the State must be seeking to admit the hearsay statements of the child victim. "Hearsay" constitutes "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid. R. 801(C). The record reflects that both R.D. and M.D. testified at trial. Moreover, Lortz has not explained which of their statements, if any, he believes were hearsay and improperly admitted at trial. Since Evid. R. 807 only applies in instances of hearsay admission and Lortz has not argued that any of R.D.'s and M.D.'s statements were hearsay, we cannot find any error with regard to the lack of a competency hearing for R.D. and M.D. See Cardone v. Cardone (May 6, *Page 7 
1998), 9th Dist. No. 18349, at *8 ("If an argument exists that can support this assignment of error, it is not this court's duty to root it out."). Lortz' second assignment of error is overruled.
 Assignment of Error Number Three "THE TRIAL COURT CONVICTED JOSHUA LORTZ BASED UPON INADMISSIBLE HEARSAY TESTIMONY, IN VIOLATION OF HIS STATUTORY AND DUE PROCESS RIGHTS."
 {¶ 17} In his third assignment of error, Lortz argues that the trial court erred in convicting him of gross sexual imposition as to K.M. and H.M. and rape as to K.M. on the basis of multiple instances of inadmissible, testimonial hearsay. Specifically, Lortz argues that the trial court: (1) violated Evid. R. 807 by failing to first analyze K.M.'s and H.M.'s statements under provision (A) of that rule; (2) erred in not excluding "[a]ll evidence gathered before trial as to both H.M. and K.M." because that evidence was testimonial; and (3) erred by admitting the "expert opinion" of CARE Center Nurse Practitioner Donna Abbott without qualifying her as an expert. We disagree.
 {¶ 18} "A trial court possesses broad discretion with respect to the admission of evidence." State v. Meyers, 9th Dist. Nos. 23864 23903,2008-Ohio-2528, at ¶ 48, citing State v. Maurer (1984),15 Ohio St.3d 239, 265. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. Blakemore, 5 Ohio St.3d at 219.
 {¶ 19} Contrary to Lortz' argument, the record reflects that K.M. never made any statements that the State introduced at trial. K.M. had not yet turned three at the time of the incident, and Nurse Practitioner Abbott testified that she never interviewed K.M. about the incident because she was too young. As previously noted, Evid. R. 807 only applies when the State seeks to admit hearsay statements. Under Evid. R. 801(A), a hearsay statement is "(1) an *Page 8 
oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." The State never introduced any evidence that might be construed as a hearsay "statement" that K.M. made. Rather, the State relied upon Lortz' statements to detectives and his written apology to prove its case with regard to K.M. Both of these items were admissible as admissions of a party-opponent. See Evid. R. 801(D)(2). Thus, Lortz' argument with regard to K.M. fails.
 {¶ 20} As to H.M., Lortz argues that her statements were not admissible at trial because the trial court failed to conduct an Evid. R. 807 analysis before admitting them and they were testimonial in nature. Evid. R. 807(A) contains four elements that must be satisfied before a child's out-of-court statement regarding abuse can be admitted. Yet, the State need not satisfy the rigors of Evid. R. 807(A) if the child's statement can be admitted through a different hearsay exception. In its brief, the State argues that H.M.'s statements were admitted through Evid. R. 803(4), not Evid. R. 807. Evid. R. 803(4) provides that the following statements will not be excluded as hearsay despite the declarant's unavailability:
 "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."
Consequently, if a child's statements were made for the purpose of medical diagnosis or treatment, the State need not prove the elements of Evid. R. 807(A). In re I.W. S.W., 9th Dist. Nos. 07CA0056 07CA0057,2008-Ohio-2492, at ¶ 11, citing State v. Muttart, 116 Ohio St.3d 5,2007-Ohio-5267.
 {¶ 21} Lortz fails to explain why H.M.'s statements to Nurse Practitioner Donna Abbott and Social Worker Elizabeth Morstatter were not statements made for the purpose of medical diagnoses or treatment. This Court previously has determined that a child's hearsay statements *Page 9 
may be admitted through Evid. R. 803(4), as the State argues, even though those same statements would not be admitted under Evid. R. 807. SeeIn re I.W. S.W. at ¶ 9-24 (finding that trial court did not abuse its discretion in admitting child's statements concerning abuse when statements were made to nurse and social worker). Lortz has failed to carry his burden of demonstrating error on appeal with respect to the admission of H.M.'s statements under the evidentiary rules. See App. R. 16(A).
 {¶ 22} Next, Lortz argues that the admission of H.M.'s statements prejudiced his due process rights because they were testimonial in nature. If an out-of-court statement is testimonial in nature and the declarant is unavailable to testify at trial, the defendant must have been given a prior opportunity to cross-examine the declarant. State v.Crager, 116 Ohio St.3d 369, 2007-Ohio-6840, at ¶ 41, citing Crawford v.Washington (2004), 541 U.S. 36, 53-54. The Ohio Supreme Court has held that a child declarant's statements are testimonial when "`the circumstances objectively indicate that there is no * * * ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.'" State v. Siler, 116 Ohio St.3d 39, 2007-Ohio-5637, paragraph one of the syllabus, quoting Davis v. Washington (2006),547 U.S. 813. The primary purpose test is an objective one. Siler at ¶ 27.
 {¶ 23} Lortz generally asserts that H.M's statements were testimonial because they were "gathered as part of the investigation of purported crimes by Mr. Lortz[.]" Yet, he has not explained why the statements were testimonial in light of the primary purpose test. Tony M., H.M.'s mother, took H.M. to the hospital for an examination after learning that Lortz might have sexually abused her daughter. Nurse Practitioner Abbott testified that she inquired as to H.M.'s medical history and performed a physical examination on her. She further testified that social *Page 10 
workers conduct interviews with children who are possible victims of abuse before she examines them, and that "[t]he information that the social worker gathers is to facilitate the medical examination." Based on the information in the record and Lortz' failure to analyze the primary purpose of H.M.'s statements, we find that H.M.'s statements were nontestimonial in nature. Nurse Practitioner Abbot "`could have reasonably believed that although the examination conducted [on H.M.] * * * would result in * * * evidence being extracted for prosecution purposes, [her] statements] would be used primarily for health-care purposes.'" Siler at ¶ 27, quoting State v. Stahl, 111 Ohio St.3d 186,2006-Ohio-5482, at ¶ 47.
 {¶ 24} Lastly, Lortz argues that the trial court committed plain error in admitting the "expert opinion" of Nurse Practitioner Abbott without qualifying her as an expert. Lortz argues that Nurse Practitioner Abbot gave an expert opinion about the truthfulness of H.M.'s statements. First, Lortz fails to identify which of Nurse Practitioner Abbott's statements allegedly constituted expert testimony. See App. R. 16(A) (noting that an appellant has the burden of demonstrating error on appeal). Second, Lortz' assignment of error only challenges "inadmissible hearsay testimony." An appellant's assignment of error provides this Court with a roadmap and directs its analysis of the trial court's judgment. State v. Bashlor, 9th Dist. Nos. 07CA009199 
07CA009209, 2008-Ohio-997, at ¶ 9, citing App. R. 16(A). Lortz' assignment of error does not contain any assertion that the trial court erred in admitting expert testimony, and the body of his brief does not contain any analysis as to why Nurse Practitioner's testimony constituted improper expert testimony. We decline to address Lortz' undeveloped argument. This Court will not assume an appellant's duty and formulate an argument on his behalf. See Cardone, supra. Lortz' third assignment of error lacks merit. *Page 11 
 Assignment of Error Number Four "THE TRIAL COURT IMPROPERLY CONSIDERED `EVIDENCE' OF UNINDICTED PRIOR BAD ACTS BY MR. LORTZ OFFERED BY THE PROSECUTION TO PAINT HIM AS A SEXUAL MOLESTER"
 {¶ 25} In his fourth assignment of error, Lortz argues that the trial court erred in allowing the State to introduce improper character evidence without a proper Evid. R. 404(B) and R.C. 2907.02(E) foundation. Specifically, Lortz argues that his half-sister, Toni M., should not have been permitted to testify that Lortz had sexually abused her when she was younger. We disagree.
 {¶ 26} "While the State generally cannot introduce other acts evidence to prove that a defendant possessed a certain character trait and acted in conformity therewith, Evid. R. 404(B) permits the State to introduce evidence of other crimes, wrongs, or acts in certain instances."State v. Clay, 9th Dist. No. 23889, 2008-Ohio-2158, at ¶ 29. Such evidence may be admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Evid. R. 404(B). R.C. 2907.02(E) provides as follows:
 "Prior to taking testimony or receiving evidence of any sexual activity of the * * * defendant in a proceeding under this section, the court shall resolve the admissibility of the proposed evidence in a hearing in chambers, which shall be held at or before preliminary hearing and not less than three days before trial, or for good cause shown during the trial."
"Sexual activity" is defined as any sexual conduct or contact. R.C. 2907.01(C).
 {¶ 27} This Court previously has determined that a trial court has no obligation to sua sponte hold an R.C. 2907.02(E) hearing in a bench trial. State v. Yost (Sept. 18, 1985), 9th Dist. No. 12065, at *2, citing State v. Acre (1983), 6 Ohio St.3d 140. If a defendant fails to make a timely request for such a hearing during his bench trial, then the defendant forfeits that hearing. *Page 12 
Id. The record reflects that Lortz never requested an R.C. 2907.02(E) hearing below and never objected on that basis. Therefore, he has forfeited the hearing. As Lortz has not argued plain error on appeal, we decline to address his R.C. 2907.02(E) argument. See Hairston at ¶ 11.
 {¶ 28} As to the admission of Toni M.'s statement about Lortz' prior sexual abuse, we find that Lortz has not demonstrated prejudice on appeal. Lortz' written apology contained an apology to Toni M. for Lortz' hurting her in the past. Moreover, Lortz testified on his own behalf and admitted to moving out of his mother's house and receiving therapy when he was young because of what he did to his sister. Given that evidence of Toni M.'s abuse by Lortz emerged at various other points in the trial, including in Lortz' own testimony, Lortz was not prejudiced by the trial court's admission of Toni M.'s statement during her direct examination. Lortz' fourth assignment of error lacks merit.
 Assignment of Error Number Five "A NEW TRIAL IS WARRANTED WHEN ACCUSING WITNESS M.D. WAS LED TO HER ANSWERS BY THE PROSECUTION WITHOUT INTERRUPTION BY THE TRIAL COURT OR DEFENSE COUNSEL."
 {¶ 29} In his fifth assignment of error, Lortz argues that the trial court erred in convicting him of rape and gross sexual imposition with regard to M.D. because the prosecution inappropriately "coach[ed]" her both before and during trial. Specifically, Lortz argues that M.D. only came forward with charges against him at the urging of the prosecutor and that the prosecutor asked M.D. leading questions throughout her direct examination. We disagree.
 {¶ 30} Evid. R. 611(A) provides, in relevant part, that:
 "The court shall exercise reasonable control over the mode * * * of interrogating witnesses * * * so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment." *Page 13 
"Ohio courts have consistently held leading questions asked of a child on direct examination, after prior determination of the child's competency, are not prohibited." State v. Butler (Jan. 29, 1997), 9th Dist. No. 96CA006343, at *3, citing State v. Holt (1969),17 Ohio St.2d 81, 83, clarified on other grounds, State v. Benner (1988),40 Ohio St.3d 301, 313; State v. Miller (1988), 44 Ohio App.3d 42, 45. The trial court has the discretion to permit the State to ask leading questions upon the direct examination of the child victim. Butler at *3.
 {¶ 31} Since Lortz fails to argue that any one or more specific questions prejudiced his trial, we will generally review M.D.'s testimony under Lortz' claim of error. The record reflects that M.D. had multiple, developmental problems that at times made it difficult for her to communicate. Connie D., M.D.'s mother, testified that M.D. attended special education classes. She described M.D. as "slow" and "disabled.]" From the transcripts, it appears that M.D. could answer questions that were simple and direct, but complicated questions confused her. Furthermore, it would seem that M.D. struggled at several points during her testimony. At one point, the trial judge told her, "[i]t is all right [M.D.] Just take your time." From our review of the record, we cannot agree that the trial court abused its discretion in allowing the prosecution to ask M.D. leading questions under all three of the considerations set forth in Evid. R. 611(A).
 {¶ 32} As to Lortz' argument that the prosecution orchestrated the entirety of M.D.'s case, Lortz cannot demonstrate prejudice on appeal. Lortz' counsel cross-examined M.D. extensively about the conditions under which she reported the crime and the individuals she spoke with during that investigation. She admitted that she did not independently go to the police to report what Lortz had done to her. Rather, she agreed to talk to the prosecutor once he began to investigate the other girls' accusations. As such, the issue of the influence that the prosecutor had over M.D.'s reporting of Lortz was simply a matter of credibility for the trial *Page 14 
court to consider. Contrary to Lortz' assertion, defense counsel clearly proceeded under the theory that the prosecution helped to fabricate M.D.'s story throughout the entirety of his cross-examination. There is no indication that the trial court ignored or otherwise disregarded this argument. Consequently, there is no merit to Lortz' argument. Lortz' fifth assignment of error is overruled.
 Assignment of Error Number Six "TRIAL COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO OBJECT TO INTRODUCTION OF AN ALLEGED CONFESSION AND FAILED TO CROSS-EXAMINE WITNESS R.D."
 {¶ 33} In his sixth assignment of error, Lortz argues that his trial counsel was ineffective because he failed to: (1) file a motion to suppress or object to the admission of Lortz' written apology letter and the playing of the videotape that depicted him writing the letter; (2) move for evidentiary hearings under either Evid. R. 807 or 601 regarding M.D.'s and R.D.'s competency; and (3) cross-examine R.D. We disagree.
 {¶ 34} To prove an ineffective assistance claim, Lortz must show that: (1) counsel's performance was deficient to the extent that "counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment [,]" and (2) "the deficient performance prejudiced the defense." Strickland v. Washington (1984), 466 U.S. 668, 687. To demonstrate prejudice, Lortz must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989),42 Ohio St.3d 136, paragraph three of the syllabus. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."Strickland, 466 U.S. at 691. Furthermore, the Court need not *Page 15 
address both Strickland prongs if an appellant fails to prove either one. State v. Ray, 9th Dist. No. 22459, 2005-Ohio-4941, at ¶ 10.
 {¶ 35} In reviewing an ineffective assistance claim, this Court recently noted that:
 "Typically, the decision not to file a motion to suppress or other pretrial motion does not constitute ineffective assistance of counsel `when doing so was a tactical decision, there was no reasonable probability of success, or there was no prejudice to the defendant.'" State v. Meyers, 9th Dist. No. 23864 23903, 2008-Ohio-2528, at ¶ 67, quoting State v. Nields (2001), 93 Ohio St.3d 6, 34.
Moreover, the "failure to make objections is within the realm of trial tactics and does not establish ineffective assistance of counsel."State v. Taylor, 9th Dist. No. 01CA007945, 2002-Ohio-6992, at ¶ 76. Neither does "[t]he extent and scope of cross-examination" which "clearly fall[s] within the ambit of trial strategy." State v.Leonard, 104 Ohio St.3d 54, 2004-Ohio-6235, at ¶ 146.
 {¶ 36} Although Lortz' counsel did not file a motion to suppress with regard to Lortz' written letter of apology and the videotape that depicted his writing the letter, the record contained duplicative evidence on these issues. Detective Bennett testified that he interviewed Lortz, and Lortz talked about all the girls during the interview and admitted "some degree of sexual molestation of each of them." Consequently, Lortz suffered no prejudice as a result of his counsel not filing a motion to suppress the apology letter and videotape depicting the same.
 {¶ 37} Similarly, Lortz did not suffer any prejudice as a result of his counsel not seeking competency hearings for M.D. and R.D. under Evid. R. 807 and 601. We have already noted that the State could have relied on Evid. R. 803(4), which does not require a competency evaluation, rather than Evid. R. 807. Once again, Lortz fails to argue that Evid. R. 803(4) did not apply. Accordingly, Lortz has failed to demonstrate prejudice as to his Evid. R. 807 argument. Nor can he demonstrate prejudice because of his counsel's failure to seek a hearing under Evid. R. 601. *Page 16 
That rule governs the general competency of witnesses and provides that witnesses who are "of unsound mind [and] * * * who appear incapable of receiving just impressions of the facts and transactions * * * or of relating them truly" are not competent to testify. Evid. R. 601(A). The trial court has the duty of conducting an Evid. R. 601 competency inquiry, but possesses broad discretion with respect to the competency determination. State v. Middlesworth, 9th Dist. No. 05CA0016,2006-Ohio-12, at ¶ 7-8. Here, the trial court did not conduct a competency hearing to determine M.D.'s and R.D.'s competency on the record. Yet, the trial judge presided over the entire bench trial and personally assessed each witness' testimony. The trial court never indicated that it doubted either girl's competence. The record is replete with testimony that both M.D. and R.D. suffered from developmental problems, but both girls answered preliminary questions about the importance of telling the truth in court and what repercussions they might face for failing to do so. Therefore, we cannot agree that Lortz suffered prejudice as a result of his counsel's failure to raise the competency issue at trial.
 {¶ 38} Finally, Lortz argues that his counsel was ineffective for failing to cross-examine R.D. Although Lortz' counsel did not cross-examine R.D. directly, he questioned her mother and Social Worker Andrea Lever about R.D. and the statements that R.D. made regarding the investigation. In light of the entire record, we are unwilling to hold that this failure to cross-examine R.D. directly was an instance of ineffective assistance of counsel rather than an instance of trial strategy. See Leonard at ¶ 146. Lortz' sixth assignment of error lacks merit.
 Assignment of Error Number Seven "PRIOR APPELLATE COUNSEL WAS INEFFECTIVE, IN VIOLATION OF THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION, FOR FAILING TO PROTECT MR. LORTZ'S RIGHTS TO REVIEW ON THE MERITS." *Page 17 
 {¶ 39} Pursuant to App. R. 26(B)(7) and this Court's August 8, 2007 journal entry, Lortz argues that his representation by prior appellate counsel was deficient and that he was prejudiced by that deficiency. Upon review of the argument presented, we find that counsel was deficient in failing to file a motion to waive the payment of the deposit on appeal pursuant to Loc. R. 2 and that Lortz was prejudiced by that deficiency. Accordingly, we vacate our prior judgment of dismissal dated August 8, 2007.
 Assignment of Error Number Eight "GIVEN THE CUMULATIVE ERROR AT THE BENCH TRIAL, MR. LORTZ WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO A FAIR TRIAL."
 {¶ 40} In his eighth assignment of error, Lortz argues that the cumulative errors committed throughout his case deprived him of a fair trial. We disagree.
 {¶ 41} To support a claim of cumulative error, there must be multiple instances of harmless error. State v. Garner (1995), 74 Ohio St.3d 49,64. Cumulative error only exists where the errors during trial actually "deprive[d] a defendant of the constitutional right to a fair trial."State v. DeMarco (1987), 31 Ohio St.3d 191, paragraph two of the syllabus. "[T]here can be no such thing as an error-free, perfect trial, and * * * the Constitution does not guarantee such a trial." State v.Hill (1996), 75 Ohio St.3d 195, 212, quoting U.S. v. Hasting (1983),461 U.S. 499, 508-09. Moreover, "errors cannot become prejudicial by sheer weight of numbers." Hill, 75 Ohio St.3d at 212. Our review of the record convinces us that Lortz' trial was not plagued by numerous errors and that he received his constitutional right to a fair trial. Lortz' eighth assignment of error lacks merit.
 III {¶ 42} Lortz' eight assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed. *Page 18 
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 SLABY, P. J. DICKINSON, J. CONCUR *Page 1